(Slip Opinion) OCTOBER TERM, 2019 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BABB *v.* WILKIE, SECRETARY OF VETERANS AFFAIRS

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 18–882.  Argued January 15, 2020—Decided April 6, 2020

Petitioner Noris Babb, a clinical pharmacist at a U. S. Department of Veterans Affairs Medical Center, sued the Secretary of Veterans Affairs (hereinafter VA) for, *inter alia*, age discrimination in various adverse personnel actions.  The VA moved for summary judgment, offering nondiscriminatory reasons for the challenged actions.  The District Court granted the VA's motion after finding that Babb had established a prima facie case, that the VA had proffered legitimate reasons for the challenged actions, and that no jury could reasonably conclude that those reasons were pretextual.  On appeal, Babb contended the District Court's requirement that age be a but-for cause of a personnel action *was* inappropriate under the federal-sector provision of the Age Discrimination in Employment Act of 1967 (ADEA).  Because most federal-sector "personnel actions" affecting individuals aged 40 and older must be made "free from any discrimination based on age," 29 U. S. C. §633a(a), Babb argued, such a personnel action is unlawful if age is a factor in the challenged decision.  Thus, even if the VA's proffered reasons in her case were not pretextual, it would not necessarily follow that age discrimination played no part.  The Eleventh Circuit found Babb's argument foreclosed by Circuit precedent.

*Held*: The plain meaning of §633a(a) demands that personnel actions be untainted by any consideration of age.  To obtain reinstatement, damages, or other relief related to the end result of an employment decision, a showing that a personnel action would have been different if age had not been taken into account is necessary, but if age discrimination played a lesser part in the decision, other remedies may be appropriate.  Pp. 3–14.

(a) The Government argues that the ADEA's federal-sector provision imposes liability only when age is a but-for cause of an employment decision, while Babb maintains that it prohibits any adverse consideration of age in the decision-making *process*. The plain meaning of the statutory text shows that age need not be a but-for cause of an employment decision in order for there to be a violation. Pp. 4–7.

(1) The ADEA does not define the term "personnel action," but a statutory provision governing federal employment, 5 U. S. C. §2302(a)(2)(A), defines it to include most employment-related decisions—an interpretation consistent with the term's general usage. The phrase "free from" means "untainted," and "any" underscores that phrase's scope. As for "discrimination," its "normal definition" is "differential treatment." *Jackson* v. *Birmingham Bd. of Ed.,* 544 U. S. 167, 174. And "[i]n common talk, the phrase 'based on' indicates a but-for causal relationship," *Safeco Ins. Co. of America* v. *Burr,* 551 U. S. 47, 63, thus indicating that age must be a but-for cause of the discrimination alleged. The remaining phrase—"shall be made"—denotes a duty, emphasizing the importance of avoiding the taint. Pp. 4–5.

(2) Two matters of syntax are critical here. First, "based on age" is an adjectival phrase modifying the noun "discrimination," not the phrase "personnel actions." Thus, age must be a but-for cause of discrimination but not the personnel action itself. Second, "free from any discrimination" is an adverbial phrase that modifies the verb "made" and describes how a personnel action must be "made," namely, in a way that is not tainted by differential treatment based on age. Thus, the straightforward meaning of §633a(a)'s terms is that the statute does not require proof that an employment decision would have turned out differently if age had not been taken into account. Instead, if age is a factor in an employment decision, the statute has been violated.

The Government has no answer to this parsing of the statutory text. It makes correct points about the meaning of particular words, but draws the unwarranted conclusion that the statutory text requires something more than a federal employer's mere consideration of age in personnel decisions. The Government's only other textual argument is that the term "made" refers to a particular moment in time, *i.e.,* the moment when the final employment decision is made. That interpretation, however, does not mean that age must be a but-for cause of the ultimate outcome. Pp. 5–7.

(b) Contrary to the Government's primary argument, this interpretation is not undermined by prior cases interpreting the Fair Credit Reporting Act, 15 U. S. C. §1681m(a), see *Safeco Ins. Co. of America,* 551 U. S. 47; the ADEA's private-sector provision, 29 U. S. C. §623(a)(1), see *Gross* v. *FBL Financial Services, Inc.,* 557 U. S. 167; and Title VII's anti-retaliation provision, 42 U. S. C. §2000e–3(a), see

Syllabus

*University of Tex. Southwestern Medical Center* v. *Nassar,* 570 U. S. 338. The language of §633a(a) is markedly different than the language of those statutes; thus the holdings in those cases are entirely consistent with the holding here. And the traditional rule favoring but-for causation does not change the result: §633a(a) requires proof of but-for causation, but the objection of that causation is "discrimination," not the personnel action. Pp. 8–11.

(c) It is not anomalous to hold the Federal Government to a stricter standard than private employers or state and local governments. See §623(a). When Congress expanded the ADEA's scope beyond private employers, it added state and local governments to the definition of employers in the private-sector provision. But it "deliberately prescribed a distinct statutory scheme applicable only to the federal sector," *Lehman* v. *Nakshian,* 453 U. S. 156, 166, eschewing the private-sector provision language. That Congress would want to hold the Federal Government to a higher standard is not unusual. See, *e.g.,* 5 U. S. C. §2301(b)(2). Regardless, where the statute's words are unambiguous, the judicial inquiry is complete. Pp. 11–13.

(d) But-for causation is nevertheless important in determining the appropriate remedy. Plaintiffs cannot obtain compensatory damages or other forms of relief related to the end result of an employment decision without showing that age discrimination was a but-for cause of the employment outcome. This conclusion is supported by basic principles long employed by this Court, see, *e.g., Steel Co.* v. *Citizens for Better Environment*, 523 U. S. 83, 103, and traditional principles of tort and remedies law. Remedies must be tailored to the injury. Plaintiffs who show that age was a but-for cause of differential treatment in an employment decision, but not a but-for cause of the decision itself, can still seek injunctive or other forward-looking relief. Pp. 13–14.

743 Fed. Appx. 280, reversed and remanded.

ALITO, J., delivered the opinion of the Court, in which ROBERTS, C. J., and BREYER, SOTOMAYOR, KAGAN, GORSUCH, and KAVANAUGH, JJ., joined, and in which GINSBURG, J., joined as to all but footnote 3. SOTOMAYOR, J., filed a concurring opinion, in which GINSBURG, J., joined. THOMAS, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 18–882

_____

## NORIS BABB, PETITIONER *v.* ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[April 6, 2020]

JUSTICE ALITO delivered the opinion of the Court.*

The federal-sector provision of the Age Discrimination in Employment Act of 1967 (ADEA), 88 Stat. 74, 29 U. S. C. §633a(a), provides (with just a few exceptions) that "personnel actions" affecting individuals aged 40 and older "shall be made free from any discrimination based on age." We are asked to decide whether this provision imposes liability only when age is a "but-for cause" of the personnel action in question.

We hold that §633a(a) goes further than that. The plain meaning of the critical statutory language ("made free from any discrimination based on age") demands that personnel actions be untainted by any consideration of age. This does not mean that a plaintiff may obtain all forms of relief that are generally available for a violation of §633a(a), including hiring, reinstatement, backpay, and compensatory damages, without showing that a personnel action would have been different if age had not been taken into account. To obtain such relief, a plaintiff must show that age was a but-for cause of the challenged employment decision. But

_____

*JUSTICE GINSBURG joins all but footnote 3 of this opinion.

if age discrimination played a lesser part in the decision, other remedies may be appropriate.

I

Noris Babb, who was born in 1960, is a clinical pharmacist at the U. S. Department of Veterans Affairs Medical Center in Bay Pines, Florida. Babb brought suit in 2014 against the Secretary of Veterans Affairs (hereinafter VA), claiming that she had been subjected to age and sex discrimination, as well as retaliation for engaging in activities protected by federal anti-discrimination law. Only her age-discrimination claims are now before us.

Those claims center on the following personnel actions. First, in 2013, the VA took away Babb's "advanced scope" designation, which had made her eligible for promotion on the Federal Government's General Scale from a GS–12 to a GS–13.[1] Second, during this same time period, she was denied training opportunities and was passed over for positions in the hospital's anticoagulation clinic. Third, in 2014, she was placed in a new position, and while her grade was raised to GS–13, her holiday pay was reduced. All these actions, she maintains, involved age discrimination, and in support of her claims, she alleges, among other things, that supervisors made a variety of age-related comments.

The VA moved for summary judgment and offered non-discriminatory reasons for the challenged actions, and the District Court granted that motion. Evaluating each of Babb's claims under the burden-shifting framework outlined in *McDonnell Douglas Corp.* v. *Green*, 411 U. S. 792 (1973), the court found that Babb had established a prima facie case, that the Secretary had proffered legitimate rea-

---

[1] The General Schedule (GS) is a federal pay scale that is divided into 15 numbered grades. See 5 U. S. C. §5104. "[A]s the number of the grade increases, so do pay and responsibilities." *United States* v. *Clark*, 454 U. S. 555, 557 (1982).

sons for the challenged actions, and that no jury could reasonably conclude that those reasons were pretextual.

Babb appealed, contending that the District Court should not have used the *McDonnell Douglas* framework because it is not suited for "mixed motives" claims. She argued that under the terms of the ADEA's federal-sector provision, a personnel action is unlawful if age is a factor in the challenged decision. As a result, she explained that even if the VA's proffered reasons were not pretextual, it would not necessarily follow that age discrimination played no part.

The Eleventh Circuit panel that heard Babb's appeal found that her argument was "foreclosed" by Circuit precedent but added that it might have agreed with her if it were "writing on a clean slate." *Babb* v. *Secretary*, *Dept. of Veterans Affairs*, 743 Fed. Appx. 280, 287 (2018) (citing *Trask* v. *Secretary*, *Dept. of Veterans Affairs*, 822 F. 3d 1179 (CA11 2016)).

We granted certiorari, 588 U. S. ___ (2019), to resolve a Circuit split over the interpretation of §633a(a).

## II

That provision of the ADEA states in relevant part: "All personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age." 29 U. S. C. §633a(a).

The Government interprets this provision to impose liability only when age is a but-for cause of an employment decision. According to the Government, even if age played a part in such a decision, an employee or applicant for employment cannot obtain any relief unless it is shown that the decision would have been favorable if age had not been taken into account. This interpretation, the Government contends, follows both from the meaning of the statutory text and from the "default rule" that we have recognized in

other employment discrimination cases, namely, that recovery for wrongful conduct is generally permitted only if the injury would not have occurred but for that conduct. See, *e.g.*, *University of Tex. Southwestern Medical Center* v. *Nassar*, 570 U. S. 338, 346–347 (2013).

Babb interprets the provision differently. She maintains that its language prohibits any adverse consideration of age in the decision-making *process*. Accordingly, she argues proof that age was a but-for cause of a challenged employment decision is not needed.

A

Which interpretation is correct? To decide, we start with the text of the statute, see *Gross* v. *FBL Financial Services, Inc.*, 557 U. S. 167, 175 (2009), and as it turns out, it is not necessary to go any further. The plain meaning of the statutory text shows that age need not be a but-for cause of an employment decision in order for there to be a violation of §633a(a). To explain the basis for our interpretation, we will first define the important terms in the statute and then consider how they relate to each other.

1

Section 633a(a) concerns "personnel actions," and while the ADEA does not define this term, its meaning is easy to understand. The Civil Service Reform Act of 1978, which governs federal employment, broadly defines a "personnel action" to include most employment-related decisions, such as appointment, promotion, work assignment, compensation, and performance reviews. See 5 U. S. C. §2302(a)(2)(A). That interpretation is consistent with the term's meaning in general usage, and we assume that it has the same meaning under the ADEA.

Under §633a(a), personnel actions must be made "free from" discrimination. The phrase "free from" means "un-

tainted" or "[c]lear of (something which is regarded as objectionable)." Webster's Third New International Dictionary 905 (def. 4(a)(2)) (1976); 4 Oxford English Dictionary 521 (def. 12) (1933); see also American Heritage Dictionary 524 (def. 5(a)) (1969) (defining "free" "used with from" as "[n]ot affected or restricted by a given condition or circumstance"); Random House Dictionary of the English Language 565 (def. 12) (1966) (defining "free" as "exempt or released from something specified that controls, restrains, burdens, etc."). Thus, under §633a(a), a personnel action must be made "untainted" by discrimination based on age, and the addition of the term "any" ("free from *any* discrimination based on age") drives the point home.[2] And as for "discrimination," we assume that it carries its "'normal definition,'" which is "'differential treatment.'" *Jackson* v. *Birmingham Bd. of Ed.*, 544 U. S. 167, 174 (2005).

Under §633a(a), the type of discrimination forbidden is "discrimination based on age," and "[i]n common talk, the phrase 'based on' indicates a but-for causal relationship." *Safeco Ins. Co. of America* v. *Burr*, 551 U. S. 47, 63 (2007); cf. *Comcast Corp.* v. *National Assn. of African American-Owned Media*, *ante*, at 6. Therefore, §633a(a) requires that age be a but-for cause of the discrimination alleged.

What remains is the phrase "shall be made." "[S]hall be made" is a form of the verb "to make," which means "to bring into existence," "to produce," "to render," and "to cause to be or become." Random House Dictionary of the English Language, at 866. Thus, "shall be made" means "shall be produced," etc. And the imperative mood, denoting a duty, see Black's Law Dictionary 1233 (5th ed. 1979), emphasizes the importance of avoiding the taint.

_____

[2] We have repeatedly explained that "'the word "any" has an expansive meaning.'" *Ali* v. *Federal Bureau of Prisons*, 552 U. S. 214, 219 (2008) (quoting *United States* v. *Gonzales*, 520 U. S. 1, 5 (1997)). The standard dictionary definition of "any" is "[s]ome, regardless of quantity or number." American Heritage Dictionary 59 (def. 2) (1969).

2

So much for the individual terms used in §633a(a). What really matters for present purposes is the way these terms relate to each other. Two matters of syntax are critical. First, "based on age" is an adjectival phrase that modifies the noun "discrimination." It does not modify "personnel actions." The statute does not say that "it is unlawful to take personnel actions that are based on age"; it says that "personnel actions . . . shall be made free from any discrimination based on age." §633a(a). As a result, age must be a but-for cause of discrimination—that is, of differential treatment—but not necessarily a but-for cause of a personnel action itself.

Second, "free from any discrimination" is an adverbial phrase that modifies the verb "made." *Ibid.* Thus, "free from any discrimination" describes how a personnel action must be "made," namely, in a way that is not tainted by differential treatment based on age. If age discrimination plays any part in the way a decision is made, then the decision is not made in a way that is untainted by such discrimination.

This is the straightforward meaning of the terms of §633a(a), and it indicates that the statute does not require proof that an employment decision would have turned out differently if age had not been taken into account.

To see what this entails in practice, consider a simple example. Suppose that a decision-maker is trying to decide whether to promote employee A, who is 35 years old, or employee B, who is 55. Under the employer's policy, candidates for promotion are first given numerical scores based on non-discriminatory factors. Candidates over the age of 40 are then docked five points, and the employee with the highest score is promoted. Based on the non-discriminatory factors, employee A (the 35-year-old) is given a score of 90, and employee B (the 55-year-old) gets a score of 85. But employee B is then docked 5 points because of age and thus

ends up with a final score of 80. The decision-maker looks at the candidates' final scores and, seeing that employee A has the higher score, promotes employee A.

This decision is not "made" "free from any discrimination" because employee B was treated differently (and less favorably) than employee A (because she was docked five points and A was not). And this discrimination was "based on age" because the five points would not have been taken away were it not for employee B's age.

It is true that this difference in treatment did not affect the outcome, and therefore age was not a but-for cause of the decision to promote employee A. Employee A would have won out even if age had not been considered and employee B had not lost five points, since A's score of 90 was higher than B's initial, legitimate score of 85. But under the language of §633a(a), this does not preclude liability.

The Government has no answer to this parsing of the statutory text. It makes two correct points: first, that "'discrimination based on age'" "requires but-for causation," and, second, that "'discrimination'" means "'"differential treatment."'" Brief for Respondent 16–17. But based on these two points, the Government draws the unwarranted conclusion that "[i]t is thus not enough for a federal employer merely to *consider* age . . . if that consideration does not actually cause the employer to make a less favorable personnel action than it would have made for a similarly situated person who is younger." *Id.*, at 17. That conclusion does not follow from the two correct points on which it claims to be based. What follows instead is that, under §633a(a), age must be the but-for cause of *differential treatment*, not that age must be a but-for cause of *the ultimate decision*.[3]

————————

[3] Beyond this, the Government's only other textual argument is that the term "made" refers to a particular moment in time, *i.e.*, the moment when the final employment decision is made. We agree, but this does not mean that age must be a but-for cause of the ultimate outcome. If,

## B

The Government's primary argument rests not on the text of §633a(a) but on prior cases interpreting different statutes. But contrary to the Government's argument, nothing in these past decisions undermines our interpretation of §633a(a).

1. In *Safeco Ins. Co. of America* v. *Burr*, 551 U. S., at 63, we interpreted a provision of the Fair Credit Reporting Act (FCRA) requiring that notice be provided "[i]f any person takes any *adverse action* with respect to any consumer that is *based* in whole or in part *on any information contained in a consumer [credit] report.*" 15 U. S. C. §1681m(a) (emphasis added). This language is quite different from that of 29

---

at the time when the decision is actually made, age plays a part, then the decision is not made "free from" age discrimination.

It is not clear that Babb actually disagrees with the Government on this point, although the many references in her brief to the decision-making process could be read to mean that §633a(a) can be violated even if age played no part whatsoever when the actual decision was made. If that is what Babb wants to suggest, however, we must disagree. It is entirely natural to regard an employment decision as being "made" at the time when the outcome is actually determined and not during events leading up to that decision. See American Heritage Dictionary, at 788 (def. 10) (defining "make" as "[t]o arrive at" a particular conclusion, *i.e.*, to *"make a decision"*). And holding that §633a(a) is violated when the consideration of age plays no role in the final decision would have startling implications.

Consider this example: A decision-maker must decide whether to promote employee A, who is under 40, or employee B, who is over 40. A subordinate recommends employee A and says that the recommendation is based in part on employee B's age. The decision-maker rebukes this subordinate for taking age into account, disregards the recommendation, and makes the decision independently. Under an interpretation that read "made" expansively to encompass a broader personnel process, §633a(a) would be violated even though age played no role whatsoever in the ultimate decision. Indeed, there might be a violation even if the decision-maker decided to promote employee B. We are aware of no other anti-discrimination statute that imposes liability under such circumstances, and we do not think that §633a(a) should be understood as the first.

U. S. C. §633a(a).

In §1681m(a), the phrase "based . . . on any information contained in a consumer [credit] report" modifies "adverse action," and thus the information in question must be a but-for cause of the adverse action. By contrast, in §633a(a), "based on" does not modify "personnel actions"; it modifies "discrimination," *i.e.*, differential treatment based on age.

The Government tries to find support in *Safeco*'s discussion of FCRA's reference to an adverse action that is "based . . . *in part*" on a credit report. 15 U. S. C. §1681m(a) (emphasis added). The *Safeco* Court observed that the phrase "in part" could be read to mean that notice had to be given "whenever the report was considered in the rate-setting process," but it rejected this reading. 551 U. S., at 63. The Government suggests that the Court reached this conclusion because it thought that Congress would have "said so expressly" if it had meant to require notice in situations where consideration of a credit report was inconsequential. Brief for Respondent 19. Accordingly, the Government argues, because §633a(a) does not say expressly that consideration of age is unlawful, we should conclude that mere consideration is insufficient to trigger liability. See *id*., at 19–20.

This argument fails for two reasons. First, as explained above, the language of §633a(a) *does* expressly impose liability if age discrimination plays a part in a federal employment decision. Second, *Safeco* did not invoke the sort of super-plain-statement rule that the Government now attributes to it. Instead, the *Safeco* Court rejected the argument on other grounds, including its assessment of the particular statutory scheme at issue. See 551 U. S., at 63–64. That reasoning obviously has no application here.

2. In *Gross* v. *FBL Financial Services*, *Inc.*, 557 U. S. 167, we interpreted the private-sector provision of the ADEA, 29 U. S. C. §623(a)(1), and held that it requires a plaintiff to

prove that "age was the 'but-for' cause of the employer's ad-
verse action."  557 U. S., at 177.  But as we previously rec-
ognized, the ADEA's private- and public-sector provisions
are "couched in very different terms."  *Gómez-Pérez* v. *Pot-
ter*, 553 U. S. 474, 488 (2008).

Section 623(a)(1) makes it "unlawful for an employer . . .
to fail or refuse to hire or to discharge any individual or oth-
erwise discriminate against any individual with respect to
his compensation, terms, conditions, or privileges of em-
ployment, because of such individual's age."  Thus, the but-
for causal language in §623(a)(1)—"because of such individ-
ual's age"—is an adverbial phrase modifying the verbs ("to
fail or refuse to hire," etc.) that specify the conduct that the
provision regulates.  For this reason, the syntax of
§623(a)(1) is critically different from that of §633a(a),
where, as noted, the but-for language modifies the noun
"discrimination."  This is important because all the verbs in
§623(a)(1)—failing or refusing to hire, discharging, or oth-
erwise discriminating with respect to "compensation,
terms, conditions, or privileges of employment"—refer to
end results.[4]  By contrast, the provision in our case,
§633a(a), prohibits any age discrimination in the
"mak[ing]" of a personnel decision, not just with respect to
end results.

3.  Finally, in *University of Tex. Southwestern Medical
Center* v. *Nassar*, 570 U. S. 338, we interpreted Title VII's
anti-retaliation provision, 42 U. S. C. §2000e–3(a), as re-
quiring retaliation to be a but-for cause of the end result of
the employment decision.  The Court saw no "meaningful
textual difference between the text [of that provision] and

_____

[4]Moreover, even if "discriminating with respect to compensation,
terms, conditions, or privileges of employment" could be read more
broadly to encompass things that occur before a final decision is made,
the *ejusdem generis* canon would counsel a court to read that final phrase
to refer—like the prior terms—to the final decision.  See *Christopher* v.
*SmithKline Beecham Corp.*, 567 U. S. 142, 163, and n. 19 (2012).

the one in *Gross*," 570 U. S., at 352, and the Court found support for its interpretation in the rule that recovery for an intentional tort generally requires proof "'that the harm would not have occurred' in the absence of—that is, but for—the defendant's conduct." 570 U. S., at 346–347 (quoting Restatement of Torts §431, Comment *a*, pp. 1159–1160 (1934)).

That reasoning has no application in the present case. The wording of §633a(a)—which refers expressly to the "mak[ing]" of personnel actions in a way that is "free from any discrimination based on age"—is markedly different from the language of the statutes at issue in *Gross* and *Nassar*, and the traditional rule favoring but-for causation does not dictate a contrary result. Section 633a(a) requires proof of but-for causation, but the object of that causation is "discrimination," *i.e.*, differential treatment, not the personnel action itself.

For these reasons, *Safeco*, *Gross*, and *Nassar* are entirely consistent with our holding in this case.

C

We are not persuaded by the argument that it is anomalous to hold the Federal Government to a stricter standard than private employers or state and local governments. That is what the statutory language dictates, and if Congress had wanted to impose the same standard on all employers, it could have easily done so.

As first enacted, the ADEA "applied only to actions against private employers." *Lehman* v. *Nakshian*, 453 U. S. 156, 166 (1981). In 1974, "Congress expanded the scope of the ADEA" to reach both state and local governments and the Federal Government. *Ibid.* To cover state and local governments, Congress simply added them to the definition of an "employer" in the ADEA's private-sector provision, see 29 U. S. C. §630(b), and Congress could have easily done the

same for the Federal Government. Indeed, the first pro-
posal for expansion of the ADEA to government entities did
precisely that. *Lehman*, 453 U. S., at 166, n. 14.

But Congress did not choose this route. Instead, it "de-
liberately prescribed a distinct statutory scheme applicable
only to the federal sector," *id.*, at 166, and in doing so, it
eschewed the language used in the private-sector provision,
§623(a). See *Gómez-Pérez*, 553 U. S., at 488. We generally
ascribe significance to such a decision. See *Russello* v.
*United States*, 464 U. S. 16, 23 (1983) ("'[W]here Congress
includes particular language in one section of a statute but
omits it in another section of the same Act, it is generally
presumed that Congress acts intentionally and purposely
in the disparate inclusion or exclusion'").

That Congress would want to hold the Federal Govern-
ment to a higher standard than state and private employers
is not unusual. See Supp. Letter Brief for Respond-
ent 1 ("The federal government has long adhered to anti-
discrimination policies that are more expansive than those
required by . . . the ADEA"); *e.g.*, Exec. Order No. 11478, §1,
3 CFR 446 (1969) ("It is the policy of the Government of the
United States to provide equal opportunity in Federal em-
ployment for all persons, to prohibit discrimination in em-
ployment . . . and to promote the full realization of equal
employment opportunity through a continuing affirmative
program"); Exec. Order No. 12106, §1–102, 3 CFR 263
(1978) (amending Exec. Order No. 11478 to cover discrimi-
nation on the basis of age). And several years after adding
§633a(a) to the ADEA, Congress amended the civil service
laws to prescribe similar standards. See 5 U. S. C.
§2301(b)(2) ("Federal personnel management should be im-
plemented consistent with the . . . merit system principl[e
that a]ll employees and applicants for employment should
receive fair and equitable treatment in all aspects of per-
sonnel management without regard to . . . age").

In any event, "where, as here, the words of [a] statute are

unambiguous, the '"judicial inquiry is complete."'" *Desert Palace, Inc.* v. *Costa*, 539 U. S. 90, 98 (2003) (quoting *Connecticut Nat. Bank* v. *Germain*, 503 U. S. 249, 254 (1992)).

D

While Babb can establish that the VA violated §633a(a) without proving that age was a but-for cause of the VA's personnel actions, she acknowledges—and we agree—that but-for causation is important in determining the appropriate remedy. It is bedrock law that "requested relief" must "redress the alleged injury." *Steel Co.* v. *Citizens for Better Environment*, 523 U. S. 83, 103 (1998). Thus, §633a(a) plaintiffs who demonstrate only that they were subjected to unequal consideration cannot obtain reinstatement, backpay, compensatory damages, or other forms of relief related to the end result of an employment decision. To obtain such remedies, these plaintiffs must show that age discrimination was a but-for cause of the employment outcome.

We have long employed these basic principles. In *Texas* v. *Lesage*, 528 U. S. 18, 21–22 (1999) (*per curiam*), we applied this rule to a plaintiff who sought recovery under Rev. Stat. §1979, 42 U. S. C. §1983, for an alleged violation of the Equal Protection Clause. We explained: "[W]here a plaintiff challenges a discrete governmental decision as being based on an impermissible criterion and it is undisputed that the government would have made the same decision regardless, there is no cognizable injury warranting [damages] relief." 528 U. S., at 21. Cf. *Mt. Healthy City Bd. of Ed.* v. *Doyle*, 429 U. S. 274, 285 (1977) (rejecting rule that "would require reinstatement . . . even if the same decision would have been reached had the incident not occurred").

Our conclusion is also supported by traditional principles of tort and remedies law. "Remedies generally seek to place the victim of a legal wrong . . . in the position that person would have occupied if the wrong had not occurred." R. Weaver, E. Shoben, & M. Kelly, Principles of Remedies

Law 5 (3d ed. 2017). Thus, "[a]n actor's liability is limited to those harms that result from the risks that made the actor's conduct tortious." Restatement (Third) of Torts §29, p. 493 (2005). Remedies should not put a plaintiff in a more favorable position than he or she would have enjoyed absent discrimination. But this is precisely what would happen if individuals who cannot show that discrimination was a but-for cause of the end result of a personnel action could receive relief that alters or compensates for the end result.

Although unable to obtain such relief, plaintiffs are not without a remedy if they show that age was a but-for cause of differential treatment in an employment decision but not a but-for cause of the decision itself. In that situation, plaintiffs can seek injunctive or other forward-looking relief. Determining what relief, if any, is appropriate in the present case is a matter for the District Court to decide in the first instance if Babb succeeds in showing that §633a(a) was violated.

\* \* \*

The judgment of the United States Court of Appeals for the Eleventh Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 18–882

_____

## NORIS BABB, PETITIONER *v.* ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[April 6, 2020]

JUSTICE SOTOMAYOR, with whom JUSTICE GINSBURG joins, concurring.

I join the majority opinion because I agree that 29 U. S. C. §633a imposes liability even when age is not a "'but-for cause'" of a personnel action. *Ante*, at 1. I write separately to make two observations.

First, the Court does not foreclose §633a claims arising from discriminatory processes. Cf. *Comcast Corp.* v. *National Assn. of African American-Owned Media*, *ante*, p. \_\_\_ (GINSBURG, J., concurring in part and concurring in judgment). If, for example, an employer hires a 50-year-old person who passed a computer-aptitude test administered only to applicants above 40, clearly a question could arise as to whether the hiring decision was "made free from" differential treatment.

Second, this same example may suggest that §633a permits damages remedies, even when the Government engages in nondispositive "age discrimination in the 'ma[king]' of a personnel decision." *Ante*, at 10. If an applicant incurs costs to prepare for the discriminatorily administered aptitude test, a damages award compensating for such out-of-pocket expenses could restore the applicant to the "position tha[t] he or she would have enjoyed absent discrimination." *Ante*, at 14.

# SUPREME COURT OF THE UNITED STATES

————

No. 18–882

————

## NORIS BABB, PETITIONER *v.* ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[April 6, 2020]

JUSTICE THOMAS, dissenting.

Until now, the rule for pleading a claim under a federal antidiscrimination statute was clear: A plaintiff had to plausibly allege that discrimination was the but-for cause of an adverse action, unless the statute's text unequivocally replaced that standard with a different one. Today, however, the Court departs from this rule, concluding that the federal-sector provision of the Age Discrimination in Employment Act of 1967 (ADEA) imposes liability if an agency's personnel actions are at all tainted by considerations of age. See *ante*, at 1. This rule is so broad that a plaintiff could bring a cause of action even if he is ultimately promoted or hired over a younger applicant. This novel "any consideration" standard does serious damage to our interpretation of antidiscrimination statutes and disrupts the settled expectations of federal employers and employees. I therefore respectfully dissent.

## I

### A

In my view, the default rule of but-for causation applies here because it is not clearly displaced by the text of the ADEA's federal-sector provision. Though the Court engages at length with the provision's text, it barely acknowl-

edges our default rule, which undergirds our antidiscrimination jurisprudence. Because the interpretation of an antidiscrimination statute must be assessed against the backdrop of this default rule, I begin by describing the rule in detail.

We have explained that "[c]ausation in fact—*i.e.,* proof that the defendant's conduct did in fact cause the plaintiff's injury—is a standard requirement of any tort claim," including claims of discrimination. *University of Tex. Southwestern Medical Center* v. *Nassar*, 570 U. S. 338, 346 (2013) (quoting various provisions of the Restatement of Torts (1934)). "In the usual course, this standard requires the plaintiff to show that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct." *Id.*, at 346–347 (internal quotation marks omitted). But-for causation is "the background against which Congress legislate[s]," and it is "the default rul[e Congress] is presumed to have incorporated, absent an indication to the contrary in the statute itself." *Id.*, at 347 (citing W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 265 (5th ed. 1984)). We have recognized as much when interpreting 42 U. S. C. §1981's prohibition against racial discrimination in contracting, *Comcast Corp.* v. *National Assn. of African American-Owned Media, ante*, p. ___, Title VII's retaliation provision, *Nassar*, 570 U. S. 338, and the private-sector provision of the ADEA, *Gross* v. *FBL Financial Services, Inc.*, 557 U. S. 167 (2009).

Given this established backdrop, the question becomes whether the federal-sector provision of the ADEA contains sufficiently clear language to overcome the default rule. The provision states: "All personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age." 29 U. S. C. §633a(a).

I agree with the Court that discrimination means differ-

ential treatment, that "based on" connotes a but-for relationship, and that "to make" typically means to produce or to become. *Ante*, at 5. But I disagree with the Court's overall interpretation of how these terms fit together. Specifically, the Court believes that "'based on age'" modifies only "'discrimination,'" not "'personnel actions.'" *Ante*, at 6. From this, the Court concludes that the plain meaning of the text "demands that personnel actions be untainted by any consideration of age." *Ante*, at 1.

In my view, however, the provision is also susceptible of the Government's interpretation, *i.e.,* that the entire phrase "discrimination based on age" modifies "personnel actions." Under this reading, as the Government explains, the provision "prohibits agencies from engaging in 'discrimination *based on* age' in the making of personnel actions." Brief for Respondent 16. Because the only thing being "made" in the statute is a "personnel action," it is entirely reasonable to conclude that age must be the but-for cause of that personnel action.

At most, the substantive mandate against discrimination in §633a(a) is ambiguous. And it goes without saying that an ambiguous provision does not contain the clear language necessary to displace the default rule. Accordingly, I would hold that the default rule of but-for causation applies here.

## B

The Court attempts to downplay the sweeping nature of its novel "any consideration" rule by discussing the limited remedies available under that rule. Specifically, the Court declares that a plaintiff can obtain compensatory damages, backpay, and reinstatement only if he proves that age was a but-for cause of an adverse personnel action. Otherwise, he can obtain only injunctive or prospective relief. See *ante*, at 13–14.

If the text of the ADEA contained this remedial scheme,

it would support the Court's conclusion regarding causation. But the Court does not cite any remedial statutory provision. Nor can it, as one does not exist. The Court also fails to cite any authority suggesting that its remedial scheme existed, at common law or otherwise, in 1974 when Congress added the federal-sector provision to the ADEA. §28(b)(2), 88 Stat. 74–75.

Instead, the Court principally relies on *Texas* v. *Lesage*, 528 U. S. 18 (1999) (*per curiam*), which applied *Mt. Healthy City Bd. of Ed.* v. *Doyle*, 429 U. S. 274 (1977). See *Lesage*, 528 U. S., at 20–22. But *Mt. Healthy* and, by extension, *Lesage* do not assist the Court. In *Mt. Healthy*, the Court crafted, for the first time, a remedial scheme for constitutional claims brought under 42 U. S. C. §1983. 429 U. S., at 285–287. Significantly, that decision postdates enactment of the federal-sector provision by three years. And *Mt. Healthy* did not import a remedial scheme from a previously existing statute or common-law rule. Rather, the Court cited other cases in which it had similarly fashioned a novel causation standard for constitutional claims—none of which concerned remedies—as "instructive in formulating the test to be applied." *Id.*, at 286–287. It is incongruous to suggest that Congress could have intended to incorporate a remedial scheme that appears not to have existed at the time the statute was passed. Moreover, *Mt. Healthy* concerned a constitutional injury, and the Court was tasked with creating a remedy for that injury in the face of §1983's silence. The Court fails to provide any explanation as to why it is appropriate to rely on judicially fashioned remedies for constitutional injuries in this purely statutory context.

In sum, the Court implausibly concludes that, in the federal-sector provision of the ADEA, Congress created a novel "any consideration" causation standard but remained completely silent as to what remedies were available under that new rule. Just as implausibly, the Court assumes from this

congressional silence that Congress intended for judges to craft a remedial scheme in which the available relief would vary depending on the inflicted injury, using an as-yet-unknown scheme.

I would not follow such an unusual course. We have stated in the past that we must "read [the ADEA] the way Congress wrote it." *Meacham* v. *Knolls Atomic Power Laboratory*, 554 U. S. 84, 102 (2008). The federal-sector provision contains no clear language displacing the default rule, and Congress has demonstrated that it knows how to do so when it wishes. See 42 U. S. C. §2000e–2(m) (providing that an employer is liable if an employee establishes that a protected characteristic was a motivating factor in an employment action); §2000e–5(g)(2)(B) (limiting the remedies available to plaintiffs who establish motivating factor liability).[1] Rather than supplementing a novel rule with a judicially crafted remedy, I would infer from the textual silence that Congress wrote the ADEA to conform to the default rule of but-for causation.

## II

Perhaps the most striking aspect of the Court's analysis is its failure to grapple with the sheer unworkability of its rule. The Court contends that a plaintiff may successfully bring a cause of action if age "taint[s]" the making of a personnel action, even if the agency would have reached the same outcome absent any age-based discrimination. *Ante*, at 6–7. Because §633a(a)'s language also appears in the federal-sector provision of Title VII, 42 U. S. C. §2000e–

---

[1] Courts have followed similar reasoning when determining the standard of causation under the Americans with Disabilities Act. See, *e.g., Natofsky* v. *New York*, 921 F. 3d 337, 346–348 (CA2 2019); *Gentry* v. *East West Partners Club Mgmt. Co.*, 816 F. 3d 228, 233–236 (CA4 2016); *Serwatka* v. *Rockwell Automation, Inc.*, 591 F. 3d 957, 961–964 (CA7 2010).

16(a), the Court's rule presumably applies to claims alleging discrimination based on sex, race, religion, color, and national origin as well.

The Court's rule might have some purchase if, as Babb contends, the Federal Government purposely set up a purely merit-based system for its personnel actions. But as anyone with knowledge of the Federal Government's hiring practices knows, this is hardly the case. Federal hiring is riddled with exceptions and affirmative action programs, which by their very nature are not singularly focused on merit.

A few examples suffice to demonstrate this point. The Veterans Preference Act of 1944 entitles certain veterans, their spouses, and their parents to preferences in hiring and in retention during reductions in force. 5 U. S. C. §§2108(3), 3502, 3309; 5 CFR §211.102 (2019). Affirmative action exists for people with disabilities, both in competitive and noncompetitive employment. See 29 U. S. C. §791; 5 CFR §213.3102(u); 29 CFR §1614.203(d) (2019). The Federal Equal Opportunity Recruitment Program requires agencies to implement recruitment plans for women and certain underrepresented minorities. 5 U. S. C. §7201; 5 CFR §720.205. And Exec. Order No. 13171, 3 CFR 299 (2000), requires federal agencies to "provide a plan for recruiting Hispanics that creates a fully diverse work force for the agency in the 21st century." Whatever the wisdom of these policies, they are not strictly merit-based hiring.

The Court's new rule is irreconcilable with these various programs because affirmative action initiatives always taint personnel actions with consideration of a protected characteristic. Consider Exec. Order No. 13583, 3 CFR 267 (2011), which directs agencies to "develop and implement a more comprehensive, integrated, and strategic focus on diversity and inclusion as a key component of their human resources strategies." To provide just one example of how agencies are implementing this requirement, Customs and

Border Protection's plan commits the agency to "[i]ncreas[ing the] percentage of applicants from underrepresented groups for internships and fellowships," "[c]reat[ing] a targeted outreach campaign to underrepresented groups for career development programs at all levels," "[e]stablish[ing] and maintain[ing] strategic partnerships with diverse professional and affinity organizations," "[a]nalyz[ing] demographic data for new hires and employee separations to identify and assess potential barriers to workforce diversity," and "[d]evelop[ing] a diversity recruitment performance dashboard which provides relevant statistics and related performance metrics to evaluate progress towards achievement of recruitment goals." U. S. Customs and Border Protection, Privacy and Diversity Office, Diversity and Inclusion: Strategic Plan 2016–2020, pp. 11–15 (2015). Programs such as these intentionally inject race, sex, and national origin into agencies' hiring and promotion decisions at the express direction of the President or Congress.

A but-for (or even a motivating-factor[2]) standard of causation could coexist relatively easily with these affirmative action programs, as it would be difficult for a plaintiff to plausibly plead facts sufficient to establish the requisite causation. The Court's rule, by contrast, raises the possi-

_____

[2]Many Courts of Appeals apply the motivating-factor standard to federal-sector Title VII claims. See, *e.g., Ponce* v. *Billington*, 679 F. 3d 840, 844 (CADC 2012); *Makky* v. *Chertoff*, 541 F. 3d 205, 213–214 (CA3 2008). Even assuming this is a correct interpretation, see 42 U. S. C. §2000e–16(d) (incorporating by reference the private-sector motivating-factor provisions), the Court's "any consideration" rule imposes an even lower bar. No party submitted briefing on the criteria that courts or the Equal Employment Opportunity Commission (EEOC) use to establish a motivating factor, but the cases from which this standard was derived indicate that it mirrored the tort concept of substantial cause. See, *e.g., Price Waterhouse* v. *Hopkins*, 490 U. S. 228, 249 (1989) (plurality opinion); *Mt. Healthy City Bd. of Ed.* v. *Doyle,* 429 U. S. 274, 287 (1977).

bility that agencies will be faced with a flood of investiga-
tions by the EEOC or litigation from dissatisfied federal
employees.  So long as those employees can show that their
employer's decision to hire a particular job applicant was
"tainted" because that applicant benefited in some way
from an affirmative action program, their complaints to en-
join these programs can survive at least the pleadings
stage.[3]

*        *        *

Today's decision is inconsistent with the default rule un-
derlying our interpretation of antidiscrimination statutes
and our precedents, which have consistently applied that
rule.  Perhaps just as important, the Court's holding unnec-
essarily risks imposing hardship on those tasked with man-
aging thousands of employees within our numerous federal
agencies.  I respectfully dissent.

—————

[3] On this score, it is worth mentioning that even the EEOC has not
adopted the Court's low bar but instead employs a motivating-factor
standard.  See, *e.g., Brenton W.* v. *Chao*, 2017 WL 2953878, *9 (June 29,
2017); *Arroyo* v. *Shinseki*, 2012 WL 2952078, *4 (July 11, 2012).